UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ROBERT ASH and KATHLEEN ASH,

       Plaintiffs,

  v.

ONEWEST BANK, FSB as successor by acquisition of Indymac Federal Bank and LENDER DOE,

       Defendants.
_____/

NO. 2:09-cv-00974-FCD/DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on the motion of defendant OneWest Bank, FSB ("OneWest") to dismiss plaintiffs Robert Ash and Kathleen Ash's ("plaintiffs") First Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Plaintiffs oppose the motion. For the reasons set forth below,[1] defendant's motion is GRANTED.

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

1

**BACKGROUND**

Plaintiffs brought this action against OneWest for conduct arising out of a loan and subsequent foreclosure activity. (Pls.' First Am. Complaint ("Compl."), filed Sept. 11, 2009, ¶ 1.)  On or about January 26, 2007,[2] plaintiffs entered into two concurrent consumer credit transactions, totaling $1,092,250, with MILA, Inc., dba Mortgage Investment Lending Associates, Inc., ("MILA"). (Id. ¶ 14.)  Plaintiffs allege that MILA failed to provide them with the proper copies of the Notice of Right to Cancel at the time of signing as required by the Federal Truth in Lending Act ("TILA"), giving plaintiffs up to three years to rescind the loans. (Id. ¶ 43).

The loans were initially serviced by IndyMac Bank, FSB. (Id. ¶ 38).  On July 11, 2008, IndyMac Bank was placed into receivership by the Office of Thrift Supervision, and a new bank, IndyMac Federal Bank, FSB ("Indymac"), was created under the conservatorship of the Federal Deposit Insurance Corporation ("FDIC"). (OneWest's ex. 6).  At some point, the loans were transferred to OneWest as successor in interest to Indymac. (Compl. ¶ 12.)

On December 31, 2008, plaintiffs sent a letter to Indymac and MILA, which they allege was a Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and a valid rescission under TILA.  Plaintiffs contend that Indymac, and OneWest, as successor

---

[2] While the complaint alleges that the transaction occurred "[o]n or about January 26, 2007," plaintiffs' TILA claim is based on their contention that the transaction occurred on January 27, 2007. (See Compl. Ex. C; Ex. B to Compl. Ex. C).

in interest, engaged in misconduct by failing to respond to this letter and continuing with foreclosure of plaintiffs' property. (Compl. ¶ 38-39.)

In their First Amended Complaint, plaintiffs assert claims for 1) violation of TILA, 15 U.S.C. §§ 1601 *et seq.*, 2) violation of RESPA, 12 U.S.C. §§ 2601 *et seq.*, 3) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code §§ 1788 *et seq.*, 4) violation of California Business and Professions Code § 17200, 5) wrongful foreclosure, 6) slander of title, and 7) slander of credit. (Compl.) OneWest moves to dismiss plaintiffs' complaint for failure to state cognizable claims.

**STANDARDS**

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded"

3

allegations of the complaint. <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." <u>Twombley</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 570

4

(2007)). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. V. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**A.   OneWest's Exhibits**

In ruling upon a motion to dismiss, the court may consider matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court can

take judicial notice of matters of public record, such as pleadings in another action and records and reports of administrative bodies. See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988).

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Id. The policy concern underlying the rule is to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

Plaintiffs' complaint alleges several causes of action that are premised on (1) defendant OneWest's predecessor's failure to provide the disclosures and number of copies of the Notice of Right to Cancel; and (2) plaintiffs' ability to tender payment. (Compl. ¶ 43, 48.) Defendants request Judicial Notice of the Deeds of Trust recorded with the El Dorado County Recorder as well as a copy of the Voluntary Petition for Chapter 13 bankruptcy filed by plaintiffs. Plaintiffs do not oppose the requests. Accordingly, because the loan documents form the basis of the relevant causes of action and the bankruptcy filings are public documents filed under penalty of perjury, the court considers them for the purpose of defendant's motion to dismiss.

**B.   TILA**

Plaintiffs' first claim for relief alleges that defendant OneWest violated TILA by failing to provide the required disclosures to plaintiffs at the time of closing. (Compl. ¶ 43.) OneWest moves to dismiss the count on grounds that the claim for rescission must fail because OneWest is only a loan "servicer" and not a "creditor" as required under TILA and that "[p]laintiffs have not and cannot allege they are able to repay [("tender")] the loan proceeds." (Def.'s Mot. to Dismiss ("MTD"), filed Oct. 9, 2009, 6:26-27.)

   **1.   OneWest is not a "creditor"**

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA and its regulations, issued by the Federal Reserve System, 12 C.F.R. §§ 226.1-.29 ("Reg Z"), contain detailed disclosure requirements for consumer loans. Semar v. Platte Valley Fed. Sav. & Loan Ass'n., 791 F.2d 699, 703-04 (9th Cir. 1986).

Civil liability under TILA applies to creditors. See 15 U.S.C. § 1640(a) (2009) (establishing civil liability for "any creditor" for failure to comply with any requirement of "[15 U.S.C. §§ 1631 et seq.], including any requirement under section 125 [15 U .S.C. § 1635]"). Title 15 U.S.C. § 1641 provides that any TILA action, including a rescission claim, which may be brought against a creditor may also be brought against the

assignee of a creditor.

TILA defines creditor as referring only to a person who both:

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and
>
> (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. . . .

15 U.S.C. § 1602(f).

TILA also contemplates that a court can levy damages against assignees if the disclosure violations made by the original lender are "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). However, under § 1641, loan servicers "shall not be treated as an assignee of [a consumer] obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f) (2009). See also Marks v. Ocwen Loan Servicing, 2008 U.S. Dist. LEXIS 12175, at *4-5, 2008 WL 344210 (N.D. Cal. Feb. 6, 2008) ("Although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point.")

Plaintiffs concede that they believe that OneWest "was merely a servicing agent" and that "a servicing agent does not have liability under [TILA]." (Compl. ¶¶ 37, 40.) However, plaintiffs contend that OneWest should be liable under principles of agency because OneWest is "intentionally withholding the

8

identity of their principal thereby rendering themselves liable for their acts." (Id. ¶ 40.)  However, Plaintiffs have provided no authority to support their position that common law rules of agency apply to TILA claims.  To the contrary, Congress placed a section in the Act which specifically states that servicers are not liable under TILA.  15 U.S.C. § 1641(f).  Because OneWest is a loan servicer, and not a creditor, plaintiffs have failed to state a claim under TILA against OneWest.

### 2. Inability to Tender

The Ninth Circuit has held that rescission under TILA "*should* be conditioned on repayment of the amounts advanced by the lender."  Yamamoto v. Bank of N.Y., 329 F. 3d 1167, 1170 (9th Cir. 2003) (emphasis in original).  District courts in this circuit have dismissed rescission claims under TILA at the pleading stage based upon the plaintiff's failure to allege an ability to tender loan proceeds.  See, e.g., Garza v. Am. Home Mortgage, 2009 U.S. Dist. LEXIS 7448, at *15 (E.D. Cal. Jan. 27, 2009) (stating that "rescission is an empty remedy without [the borrower's] ability to pay back what she has received"); Ibarra v. Plaza Home Mortgage, 2009 U.S. Dist. LEXIS 80581, at *22 (S.D. Cal. Sept. 4, 2009); Carnero v. Weaver, 2009 U.S. Dist. LEXIS 62665, at *8 (N.D. Cal. July 20, 2009); Pesayco v. World Sav., Inc., 2009 U.S. Dist. LEXIS 73299, at *4 (C.D. Cal. July 29, 2009); Ing Bank v. Korn, 2009 U.S. Dist. LEXIS 73329, at *7 (W.D. Wash. May 22, 2009).

In this case, plaintiffs allege that they *were* prepared to offer tender at some point, but were denied rescission and damaged under 15 U.S.C. § 1640 by defendant's failure to engage

9

1  in the process. (Compl. ¶ 48 (emphasis added).) In their
2  opposition, plaintiffs also assert that they "are prepared to
3  tender once ONEWEST removes all of the impediments and harms they
4  have put in the way." (Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n"),
5  filed Nov. 24, 2009, 18:5-7)

6  However, neither plaintiffs' reference to a past ability to
7  tender in their complaint nor their conclusory statement in their
8  opposition allows the court to make a reasonable inference that
9  plaintiffs would be able to offer tender or should be excused
10 from doing so prior to rescission. Further, plaintiffs'
11 conclusory assertions are not supported by other portions of the
12 complaint or documents which the court takes judicial notice of.
13 As of February 20, 2009, plaintiffs were in default on one of the
14 loans in the amount of $17,687.07. On June 12, 2009, plaintiffs
15 filed a voluntary petition for Chapter 13 bankruptcy in which
16 they estimated their assets as between $500,001.00 and $1 million
17 and their liabilities as between $1 million and $10 million.
18 (OneWest's Ex. 1, 4.) Moreover, by plaintiffs' own assessment
19 set forth in their letter to Indymac in December 2008, the
20 present fair market value of the property was $700,000. (Compl.
21 Ex. C.) In order to rescind the loans, plaintiffs would be
22 required to tender more than $300,000 in addition to this alleged
23 value of the property.[3] Accordingly, plaintiffs' assertion that
24 they could refinance the property in order to tender payment is
25 not supported by their factual allegations.

---

27  [3] Plaintiffs assert that the Notice of Default and
28 bankruptcy filing should not be considered because they were the
result of defendant's failure to follow the rescission procedure.

10

1    Accordingly, OneWest's motion to dismiss plaintiffs' claim
2 under TILA is GRANTED.
3 **B.   RESPA Violation**
4    Plaintiffs' second claim for relief alleges that OneWest
5 violated 12 U.S.C. § 2605 by failing to provide a written
6 explanation in response to plaintiffs' alleged Qualified Written
7 Request ("QWR"), which was sent to Indymac and dated December 31,
8 2008. (Compl. ¶ 81-84.)  OneWest moves to dismiss this claim on
9 the basis that the QWR was sent not to OneWest, but to Indymac,
10 who was operating under the FDIC as conservator.  (MTD, 10:1-5.)
11 The defendant also contends that plaintiffs have failed to plead
12 actual damages as required by RESPA.  (Id. 9-11.)
13    **1.   Indymac was not a "Servicer"**
14    Section 2605 of RESPA requires a loan servicer to provide
15 disclosures relating to the assignment, sale, or transfer of loan
16 servicing to a potential or actual borrower: (1) at the time of
17 the loan application, and (2) at the time of transfer.  12 U.S.C.
18 § 2605.  The loan servicer also has a duty to respond to a
19 borrower's inquiry or "qualified written request."  12 U.S.C. §
20 2605(e).
21    A qualified written request is a written correspondence that
22 enables the servicer to identify the name and account of the
23 borrower.  12 U.S.C. § 2605(e)(1).  It also either includes a
24 statement describing why the borrower believes that the account
25 is in error or provides sufficient detail to the servicer
26 regarding other information sought by the borrower.  Id.  The
27 loan servicer is required to respond by making appropriate
28 corrections to the borrower's account, if necessary and, after

11

conducting an investigation, by providing the borrower with a written clarification or explanation. 12 U.S.C. § 2605(e)(2). The statute of limitation to bring an action for a Section 2605 violation is three years. 12 U.S.C. § 2614.

Section 2605 defines a "servicer" as "the person responsible for servicing the loan." 12 U.S.C. § 2605(i)(2). However, section 2605(i)(2)(A) provides that the term "servicer" does not include "the Federal Deposit Insurance Corporation . . . as receiver or conservator of an insured depository institution." 12 U.S.C. § 2605(i)(2)(A); <u>Ibarra v. Plaza Home Mortgage</u>, 2009 WL 2901637 *4 (S.D. Cal. 2009) (granting FDIC motion for judgment on the pleadings, as receiver for Indymac, with respect to RESPA claim based on alleged qualified written request).

Plaintiffs admit in their complaint that at the time they sent the QWR, Indymac "was under receivership"[4] by the FDIC and "under the management and control of the FDIC." (Compl. ¶ 38.) The court also takes judicial notice of an order from the Director of Thrift Supervision, dated July 11, 2009, in which Indymac was placed under conservatorship of the FDIC. (OneWest's Ex. 6.) Because RESPA specifically excludes the FDIC in its role as conservator from its definition of servicer, Indymac was under no obligation to respond to the alleged QWR and could not have transferred this responsibility to OneWest. See <u>Fullmer v.</u>

---

[4] While the plaintiffs use the term "receivership" Indymac Federal Bank, FSB was under a "conservatorship." On July 11, 2008 the Director of the Office of Thrift Supervision determined that grounds existed for appointment of the FDIC as receiver for IndyMac Bank, FSB. (OneWest's Ex. 6.) In the same order, the Director created IndyMac Federal Bank, FSB which would take over the assets and liabilities of IndyMac Bank and appointed the FDIC as conservator of the new bank. (<u>Id.</u>)

1  JPMorgan Chase Bank, N.A., 2:09-cv-1037, 2010 WL 95206, at * 5
2  (E.D. Cal. Jan. 6, 2010) (rejecting the "plaintiff's efforts to
3  hold [the] defendants vicariously liable for the QWR sent to
4  IndyMac Federal Bank, FSB"); Ibarra, 2009 WL 2901637, at *4.

  **2. Damages**

  A claim for a RESPA violation cannot survive a motion to dismiss when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to the defendant's failure to respond to a qualified written response.  See Benham v. Aurora Loan Servs., 2009 U.S. Dist. LEXIS 91287, at *10-11 (N.D. Cal. Oct. 1, 2009); Singh v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 73315, at *16 (N.D. Cal. Aug. 19, 2009).  While courts interpret this requirement liberally, the plaintiff must at least allege what or how the plaintiff suffered the pecuniary loss.  See Yulaeva v. Greenpoint Mortgage Funding, Inc., 2009 U.S. Dist. LEXIS 79094, at *44 (E.D. Cal. Sept. 3, 2009) (holding that the plaintiff's claim was sufficient to survive a motion to dismiss because the plaintiff alleged that she was made to pay a referral fee that was prohibited by RESPA); Hutchinson v. Del. Sav. Bank FSB, 410 F.Supp.2d 374, 383 (D.N.J. 2006) (holding that the plaintiffs adequately pled actual damages when they alleged that they suffered "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing").

  Here, plaintiffs' vague claim that they suffered harm because they were unable to name the real party in interest to this suit is insufficient to demonstrate that they suffered actual damages as a result of defendant's failure to respond to

13

1  the QWR. (Compl. ¶ 89.)  Therefore, plaintiffs have not
2  sufficiently pled facts showing a cognizable RESPA violation.
3       Accordingly, OneWest's motion to dismiss plaintiffs' second
4  claim for relief for violations of RESPA is GRANTED.

**C.   RFDCPA Violation**

6       Plaintiffs' third claim for relief alleges violation of
7  California's Rosenthal Fair Debt Collection Practices Act
8  ("RFDCPA").  OneWest moves to dismiss this claim as a conclusory
9  allegation that lacks the factual allegations necessary to
10 survive a motion to dismiss. (MTD, 11:6-7, 22-28.)
11      The RFDCPA precludes a debt collector from collecting or
12 attempting to collect from a debtor on a consumer debt in a
13 threatening or harassing manner. See Cal. Civ. Code § 1788, *et*
14 *seq*. (West 2010).  Specifically, the RFDCPA prohibits threats,
15 obscenity, misleading or false communications, and overreaching.
16 Cal. Civ. Code § 1788.10-.12; 1788.14-.16.
17      Plaintiffs allege that OneWest repeatedly contacted them in
18 an attempt to collect the debt through "a high volume of phone
19 calls and written correspondence." (Compl. ¶ 94.)  While the
20 federal rules contemplate a short and plain statement of the
21 factual basis for a plaintiff's claims, the allegations must be
22 sufficiently pled (1) to allow the court to determine whether the
23 conduct violates the statute, and (2) to enable defendants to
24 respond.  See Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at
25 1950.  A "high volume of phone calls and written correspondence"
26 does not by itself constitute a violation of the RFDCPA.  See
27 Fullmer, 2010 WL 95206, at *7.
28 /////

14

1     Accordingly, OneWest's motion to dismiss plaintiffs' third
2 claim for relief for violations of RFDCPA is GRANTED.

**D.   Violation of California Business & Professions Code § 17200**

Plaintiffs' fourth claim asserts that OneWest violated Section 17200 of the California Business & Professions Code by engaging in unlawful, unfair, and fraudulent business practices. (Compl. ¶ 102.) Plaintiffs predicate this claim on defendant's alleged violation of TILA, RESPA, and RFDCPA. (Compl. ¶ 107.)

The Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL is broad in scope, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." People ex rel. Gallegos v. Pacific Lumber Co., 158 Cal. App. 4th 950, 959 (2008) (internal citations omitted).

Because plaintiffs' UCL claim against OneWest is predicated upon defendant's alleged violations of TILA, RESPA, and RFDCPA, for the reasons set forth above, plaintiffs' allegations regarding their UCL claim similarly fails to state a basis for relief.

Accordingly, OneWest's motion to dismiss the fourth claim in the complaint for violation of UCL is GRANTED.

**E.   Wrongful Foreclosure**

Plaintiffs' fifth claim for relief alleges a wrongful foreclosure claim against OneWest. (Compl. 113-15.) Defendant contends that plaintiffs' wrongful foreclosure claim fails because plaintiff has not alleged ability to tender the borrowed

15

funds to the lender.  (MTD, 15:7-9.)

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (Cal. App. 2d Dist. 1971).  The majority of California district courts utilize the Karlsen rationale in examining wrongful foreclosure claims.  Anaya v. Advisors Lending Group, 2009 U.S. Dist. LEXIS 68373 (E.D. Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 U.S. Dist. LEXIS 60813 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 U.S. Dist. LEXIS 53920 (N.D. Cal. June 25, 2009) ("Under California law, the "tender rule" requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 U.S. Dist. LEXIS 14550 (N.D. Cal. Sept. 15, 1999).

As set forth above in the court's analysis of plaintiffs' TILA claim, plaintiffs have not alleged any facts supporting their ability to tender payment.  Accordingly, OneWest's motion

16

to dismiss plaintiffs' fifth claim for relief for wrongful foreclosure is GRANTED.

**F.   Slander of Title and Slander of Credit**[5]

Plaintiffs' sixth and seventh claims for relief are based on claims for slander of title and slander of credit. (Compl. ¶¶ 116-19.)  Plaintiffs allege that defendant "has caused to be recorded various documents including a Notice of Default which has impaired the Plaintiffs [sic] title which constitutes slander of title." (Compl. 117.)  The complaint also alleges that "the actions and inactions of the Defendants have impaired their credit history causing them to lose the ability to have good credit." (Compl. 119.)

Plaintiffs' allegations that this conduct "constitutes slander of title" or "slander of credit" are conclusory assertions barren of any factual support.  See <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986). Plaintiffs have failed to allege any facts or provide any information regarding as to how the Notice of Default amounts to slander or how plaintiffs' credit history has been affected by the actions of OneWest.

Accordingly, OneWest's motion to dismiss the plaintiffs' sixth and seventh claims for relief for slander of title and slander of credit are GRANTED.

/////

/////

---

[5]   To the extent that these claims are based on the alleged violations of TILA, RESPA, RFDCPA, and wrongful foreclosure, for the reasons set forth above, the allegations in the complaint are insufficient to state a claim.

**CONCLUSION**

For the foregoing reasons, OneWest's motion to dismiss is GRANTED.  Plaintiffs are granted fifteen (15) days from the date of this order to file a second amended complaint in accordance with this order.  Defendant is granted thirty (30) days from the date of service of plaintiffs' second amended complaint to file a response thereto.

IT IS SO ORDERED.

DATED: January 25, 2010.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE